**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

CHRISTOPHER HUGHES,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　Case No:   3:12-cv-158-J-32JBT

CITY OF LAKE CITY,

    Defendant.

_____

# **O R D E R**

Following the Court's grant of summary judgment on Plaintiff's race discrimination claim, only Plaintiff's retaliation claim remains for trial. (Doc. 36).

## I.   PLAINTIFF'S FIRST MOTION IN LIMINE AND SUPPLEMENTAL FIRST MOTION IN LIMINE

Plaintiff's First Motion in Limine (Doc. 39) and Supplemental First Motion in Limine (Doc. 59) seek to exclude evidence of (1) citizen complaints against Hughes while he was employed by the City of Lake City and (2) negative incidents during Hughes' employment at Florida A&M University ("FAMU"). Hughes argues that evidence of citizen complaints during his time working for the City is irrelevant and unfairly prejudicial because the City did not use the complaints as a basis for disciplining him until after it decided to terminate him. (Doc. 59 at 10-11). However, in the letter informing Hughes of his termination, Chief Gilmore stated that she reviewed his employment record in making her termination decision, including a number of citizen complaints. (Doc. 20-7 at 67). As the complaints listed in the

termination letter were allegedly considered in the termination decision, they are potentially relevant to the City's defense that it had a legitimate reason for terminating Hughes, and such relevance is not substantially outweighed by unfair prejudice.[1]

Hughes also argues that evidence of negative incidents during his previous employment with FAMU constitutes impermissible character evidence. (Doc. 39 at 3-5). The City cannot present evidence of misconduct during Hughes' employment with FAMU to demonstrate that it fired Hughes for the same reasons as FAMU or that Hughes likely engaged in the same conduct in Lake City as at FAMU. FED. R. EVID. 404(a). However, the City argues that evidence regarding Hughes' employment at FAMU is relevant to its after-acquired evidence defense. (Doc. 47 at 2-3). Where an employer learns after terminating an employee that the employee lied on his job application, and discovery of such lie would have resulted in the employee's termination, neither reinstatement nor front pay is an appropriate remedy. Wallace v. Dunn Const. Co., 62 F.3d 374, 380 (11th Cir. 1995). The City contends that it learned after firing Hughes that he lied on his job application when he said his reason for leaving FAMU was that he "failed to complete probation (terminated) not involved in misconduct," and that it would have fired him if it discovered this lie. (Doc. 47 at 2-3).

---

[1] Hughes also argues that the citizen complaints are inadmissible character evidence. (Doc. 39 at 5). Since the evidence is being used to demonstrate that he was fired for misconduct, rather than to show that he acted in conformity with past misconduct, this argument fails.

2

Hughes argues that the after-acquired evidence defense is inapplicable because the City had evidence of any lie before he was terminated and would not have fired him for the lie in any event. (Doc. 59 at 2-9). Effectively, Hughes is belatedly moving for partial summary judgment as to Defendant's after-acquired evidence defense. Such a late motion is inappropriate. To the extent that evidence of negative incidents during Hughes' employment at FAMU demonstrates that he lied on his employment application, and that lie was a terminable offense that the City did not learn of until after terminating Hughes, it may be admissible. As such, the Court cannot categorically exclude all evidence about negative incidents during Hughes' tenure at FAMU. However, the Court will consider a limiting instruction if asked.

## II.   DEFENDANT'S MOTION IN LIMINE TO EXCLUDE WITNESSES

The City moved to exclude "witnesses regarding discrimination," as well as John Mayo, Staci Brownfield, and Shea Brown.[2]

### A.   Witnesses Regarding Discrimination

Within the broad heading of "witnesses regarding discrimination," the City refers to three different groups of witnesses, each including, but not limited to, certain listed witnesses. (Doc. 41 at 3-5). The City admits that some of the witnesses whose testimony it seeks to exclude may have relevant testimony, but argues that their testimony should be excluded to the extent it bears on discrimination. (Doc. 41 at 4

---

[2] The City also moved to exclude Terrance Jones and Renae Smith. (Doc. 41). Hughes subsequently agreed to remove Jones (Doc. 63 at 1) and Smith (Doc. 62-5) from his witness list.

3

n.4). The Court accordingly does not have sufficient information to exclude any particular witness. However, it will try to provide as much guidance as possible.

For ease of consideration, the Court will re-sort the objected-to evidence into three categories: evidence of discrimination against Hughes, evidence of discrimination against others, and comparator evidence.

### 1. Evidence of discrimination against Hughes to support his retaliation claim

To establish a prima facie case of retaliation, Hughes must demonstrate that he engaged in statutorily protected activity, that he suffered an adverse employment action, and that the adverse employment action was causally connected to the protected activity. Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012). A plaintiff engages in statutorily protected activity when he protests an employer's conduct in the good faith, reasonable belief that the employer was engaged in unlawful employment practices. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1387-88 (11th Cir. 1998).

While admitting that some evidence of discrimination might be required for Hughes to prove retaliation, the City wishes to limit Hughes' evidence of his engagement in statutorily protected activity to the fact that he alleged he was discriminated against. (Doc. 41 at 3 n.2). However, Hughes is free to present evidence that he was discriminated against in order to explain why he made complaints about discrimination. Evidence that Hughes was treated differently after he complained

4

about discrimination would also be potentially admissible as evidence the City had a retaliatory motive for his termination.

### 2. Evidence of the City's discrimination against others

Hughes argues that evidence of the City's discrimination against others is evidence that the City's given reason for disciplining him was pretextual. (Doc. 63 at 2-5). To establish that the City's reason was pretextual, Hughes must demonstrate that the reason was false, and that retaliation was the real reason for the City's adverse action against him. Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). Hughes points out that evidence in support of a discrimination claim often constitutes evidence of retaliation. (Doc. 63 at 3). Nevertheless, evidence of discrimination, or of pretext on a discrimination claim, is not necessarily the same as evidence of pretext on a retaliation claim. See Crawford v. Carroll, 529 F.3d 961, 977 (11th Cir. 2008) (holding that a jury question existed as to pretext on the plaintiff's retaliation claim for failure to promote, but not on her discrimination claim for failure to promote). In the absence of any blanket rule, the Court must distinguish between the different sorts of discrimination evidence Hughes may wish to present.

Evidence that Chief Gilmore took adverse action against other employees after they complained about racial discrimination may be relevant to whether she had a retaliatory intent in taking action against Hughes. See Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir. 2008). However, evidence of discrimination perpetrated by anyone other than Chief Gilmore, the decision-maker, is irrelevant.

Jackson v. United Parcel Serv., Inc., No. 13-15168, 2014 WL 6476948, at *4 (11th Cir. Nov. 20, 2014) (finding irrelevant any evidence of "me too" complaints of discrimination and retaliation committed by a former supervisor, since they did not bear on the intent of the relevant decision-maker).[3] The Court reserves until trial any ruling on the admissibility of evidence that Chief Gilmore discriminated (but did not retaliate) against African-Americans. Before admitting such evidence, however, Plaintiff must, outside the presence of the jury, lay sufficient foundation for the relevance of such discrimination to Chief Gilmore's intent to retaliate in this case.

### 3. Comparator evidence

The City seeks to exclude evidence that other Lake City Police Department Officers engaged in similar or worse misconduct to Hughes and were not similarly disciplined. (Doc. 41 at 4). Evidence that similarly situated employees engaged in similar misconduct and were not similarly treated can provide evidence of pretext in a retaliation case. Summers v. City of Dothan, Ala., 757 F. Supp. 2d 1184, 1211 (M.D. Ala. 2010). To provide evidence of pretext, however, a comparator must have been involved in or accused of a nearly identical quantity and quality of misconduct as the plaintiff and have been disciplined in different ways. See Rioux v. City of Atlanta, Ga.,

---

[3] The Court notes that evidence of discrimination by other supervisors or others in a department is not per se irrelevant. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 388, 128 S. Ct. 1140, 1147, 170 L. Ed. 2d 1 (2008). However, the Court finds such evidence irrelevant on the facts of this case. Moreover, even if the evidence had some relevance, such relevance would be substantially outweighed by the unfair prejudice, as well as the waste of time that would result from holding mini-trials on whether each complainant was discriminated against.

520 F.3d 1269, 1279-80 (11th Cir. 2008) (addressing the use of comparator evidence at the pretext stage in a discrimination suit).

Hughes was unable to provide evidence of an adequate comparator at summary judgment, which doomed his discrimination claim. (Doc. 36 at 4-7). Improper comparator evidence is both irrelevant and unfairly prejudicial. Accordingly, Hughes will not be permitted to present evidence of other City employees' misconduct and punishment as "comparator evidence."[4]

### B.    Mayo, Brownfield, and Brown

The City argues that Hughes failed to adequately disclose Mayo. (Doc. 41 at 5-7). However, Hughes' answers to the City's first set of interrogatories listed Mayo as an individual with knowledge relating to Hughes' claimed damages. (Doc. 63-2 at 10). Hughes' initial disclosures listed as persons likely to have discoverable information any person named by either party in their answers to interrogatories. (Doc. 63-1 at 7). Accordingly, Mayo was adequately disclosed.

Next, the City asks the Court to exclude Staci Brownfield, whom Hughes disclosed as someone treated more favorably than him and as someone with knowledge of her role in the retaliation against him. (Doc. 41 at 7). The City contends that Hughes has never asserted that Brownfield was involved in any actionable act of retaliation and therefore has no relevant testimony on the topics on which she was disclosed. (Doc.

---

[4] This limitation is meant only to apply to alleged comparator evidence, not to evidence that would be admissible for other purposes. For example, with respect to employees whom Hughes alleges were fired for complaining about discrimination, evidence of those employee's alleged misconduct and ultimate termination may be admissible. See supra Part II.A.2.

7

41). In response, Hughes argues that Brownfield may testify regarding her retaliatory acts even though such acts were not listed in the Complaint. (Doc. 63 at 8). It is not clear what retaliatory acts Brownfield allegedly participated in and whether such acts would constitute evidence of Hughes' claim of retaliation or evidence of a different claim of retaliation, not present in the Complaint. Without any idea what it would be excluding, the Court cannot exclude Brownfield's testimony at this time.

Finally, the City seeks to exclude Shea Brown's testimony. (Doc. 41 at 8). Hughes seeks to use Brown as a comparator. (Doc. 63 at 11). From what little information the parties have provided about Brown, she is not an adequate comparator. (See Doc. 41 (indicating that Brown allegedly received no discipline in connection with falsifying traffic tickets)).

### III. DEFENDANT'S MOTION IN LIMINE REGARDING OTHER EVIDENCE

The City also moved to exclude five other categories of evidence. (Doc. 42). As Hughes consented to the exclusion of three of the categories[5] (Doc. 64), the remaining issues are whether the Court should exclude evidence of other litigation to which the City is a party and of the discipline and termination of Sergeant Blanchard and Officer Brownfield.

It is unclear whether the City wants to exclude evidence of litigation itself, or whether the City also wishes to exclude evidence of the underlying facts surrounding

---

[5] Those three categories of evidence are (1) media coverage of Hughes' employment or termination; (2) a text message Ivan Useche sent to Hughes calling Hughes an idiot; and (3) an incident where a City dispatcher, Jessica Goodson, took a call associated with the death of a child. (Doc. 64 at 2).

other litigation to which it is a party. (Doc. 42 at 2-4). If the City seeks only to exclude evidence of the litigation itself, it appears Hughes is willing to stipulate to such an exclusion. (Doc. 64 at 2). If the City is seeking to exclude evidence about the events underlying that litigation, such evidence of discrimination and retaliation has already been discussed in this Order. (See supra Part II.A).

The City seeks to exclude evidence that Blanchard resigned amid allegations that he accepted gifts and cash from an elderly woman who was once the victim of a crime. (Doc. 42 at 5). Hughes contends that "the fact that [Blanchard] was engaged in fraud certainly impacts his credibility in this case." (Doc. 64 at 2). It appears that Hughes wants to utilize this evidence to impeach Blanchard.[6] A party is only allowed to inquire into specific instances of a witness's conduct to attack the witness's character for truthfulness if the instances are probative of the truthfulness or untruthfulness of the witness or another witness whose character the witness being cross-examined has testified about. FED. R. EVID. 608. Because the Court does not know what evidence Plaintiff intends to introduce regarding Blanchard, the Court will reserve judgment on this issue until the pre-trial conference.

Finally, the City seeks to exclude evidence of Brownfield's arrest and subsequent placement on administrative leave. (Doc. 42 at 5). In response, Hughes does not address Brownfield's arrest and placement on administrative leave, but

---

[6] If instead he wants to admit it as evidence that Chief Gilmore had reason not to consider Blanchard to be credible at the time of her decision to terminate Hughes, the argument fails, unless Hughes can present evidence that Gilmore knew about Blanchard's misconduct when she decided to terminate Hughes.

9

instead argues that Brownfield is an adequate comparator because she failed to have her cruiser calibrated for radar and was only suspended from vehicle privileges for thirty days. (Doc. 64 at 2).[7] Therefore, it appears that Hughes does not contest that Brownfield's arrest and placement on administrative leave are inadmissible.

## IV. PLAINTIFF'S MOTION TO COMPEL

Hughes moved to compel the production of documents that the City allegedly promised but failed to copy and produce. (Doc. 60). On February 21, 2013, Plaintiff's investigator, James Herring, reviewed and inspected documents provided by the City. (Doc. 60 at 1-2; Doc. 67 at 5). At that time, Herring requested copies of the "Training, Evaluation, & Disciplinary" documentation in eleven Lake City Police Department employees' personnel files, files regarding specific disciplinary actions taken against eleven employees, Internal Affairs investigation case files on sixteen IA cases, and all documentation regarding a 2011 incident at Cedar Parks Apartment complex. (Doc. 60-1 at 6). Defense counsel allegedly agreed to provide such copies shortly thereafter, but did not. (Doc. 60 at 2).

Discovery closed on February 25, 2013 (Doc. 14), and the City filed a motion for summary judgment (Doc. 20), to which Hughes responded on April 18, 2013 (Doc. 25). The case was set for a final pre-trial conference on June 25, 2014, in anticipation that the case would be tried in July 2014. (Doc. 37). When preparing for trial, Plaintiff's counsel became aware that the City had failed to provide the copies, but said nothing

---

[7] Such conduct is plainly too dissimilar from Hughes' alleged misconduct to make her an adequate comparator. See supra Part II.A.3.

10

about the issue either before or at the final pre-trial conference. (Doc. 60 at 2-3). The Court decided at the final pre-trial conference to postpone trial. (Doc. 46). Plaintiff's counsel did not alert the City that the documents were missing until September 2014. (Doc. 60 at 3). On January 8, 2015, with the parties then set for trial on the February 2, 2015 trial term, Plaintiff moved to compel the production of the documents. (Doc. 60).

If the City promised to provide Hughes with documents, it should provide those documents. However, Hughes' motion to compel fails, as it was filed almost two years after the deadline for motions to compel. Hughes acknowledges that the motion was filed late and that he must demonstrate good cause for the Court to permit a late filing. (Doc. 60 at 4). Had he filed the motion shortly after the deadline, the Court may well have found good cause based on his belief that Defendant would provide the documents voluntarily. See Capers v. Noah's Ark Repair Serv., Inc., No. 6:11-CV-457-ORL-28, 2012 WL 5830588, at *4 (M.D. Fla. Nov. 16, 2012) (finding good cause where the plaintiff filed a motion to compel eighteen days after the discovery deadline because he believed at the time the deadline passed that defendant would provide the documents without court intervention). However, as Hughes waited almost two years, until the eve of trial, to file the motion to compel, there is not good cause to hear the motion.[8]

---

[8] Hughes' motion to compel also fails to comply with Local Rule 3.04's requirement that a motion to compel quote the request for production to which the motion is addressed. Hughes only states generally that the information at issue was the subject of a request for production. (Doc. 60 at 4).

11

Accordingly, it is hereby

**ORDERED:**

1. Plaintiff's First Motion in Limine (Doc. 39) and Supplemental First Motion in Limine (Doc. 59) are **DENIED**.

2. Defendant's Motion in Limine to Exclude Witnesses (Doc. 41) is **GRANTED in part** and **DENIED in part** as discussed in this Order.

3. Defendant's Motion in Limine (Doc. 42) is **GRANTED in part** and **DENIED in part** as discussed in this Order.

4. Plaintiff's Motion to Compel (Doc. 60) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida the 26th day of February, 2015.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies:

Counsel of record